ALFRED J. SIMPSON, JR., ET UX. *v.* LOUIS S. ASHMAN

[No. 24, January Term, 1945.]

494

*Decided March 2, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*Alfred F. Walker* for the appellants.

*Louis S. Ashman* for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from the Orphans' Court of Baltimore City and comes here on a stipulation of facts and proceedings in that Court.

The stipulation shows that Rosalie H. Pranke-Wagner died testate in the City of Philadelphia on the fifth day of February, 1941. By her will, an exemplified record of which was filed in the office of the Register of Wills for Baltimore City, she devised the fee of a property at 2108 Walbrook Avenue, Baltimore. She had previously leased this property unto Alfred J. Simpson, Jr., and Essie P. Simpson, his wife, for a period of ninety-nine years at a yearly rental of $60. On August 3, 1942, the Orphans' Court of Baltimore City granted letters of administration *cum testamento annexo* to Louis S. Ashman, an attorney of the Baltimore Bar.

An inventory was filed in the office of the Register of Wills showing that the only asset in said estate located in the State of Maryland consisted of the $60 yearly redeemable ground rent on the property hereinbefore mentioned, duly appraised at $1,000.

On July 12, 1944, the Register of Wills for Baltimore City made written demand upon the administrator for the payment of the inheritance tax on this parcel of real estate appraised at $1,000, tax due at one per cent., $10. The said estate and the said administrator were without means to pay any part of this inheritance tax, the premium on his bond as administrator, or for the notice to creditors. In order to pay these bills due by the estate and especially to meet the demand of the Register of Wills for the payment of the inheritance tax aforesaid, the administrator filed a petition and affidavit in the Orphans' Court of Baltimore City on July 14, 1944, asking that Court to authorize him to sell the aforesaid ground rent, the only asset of said estate, unto the said Alfred J. Simpson, Jr., and Essie P. Simpson, his wife, for $1,000. Upon this petition and affidavit the Orphans' Court passed an order authorizing and directing him to sell the aforesaid ground rent unto those parties for a cash price of $1,000, the redeemable value, and the rent accrued, and further ordered him to report the sale to that Court for ratification.

In pursuance of that order, on August 24, 1944, the administrator reported the sale on the terms and condi-

tions under which he was authorized to make the sale. On the same day the Orphans' Court passed an order that this sale would "* * * be ratified and confirmed, unless cause be shown to the contrary on or before the 25th day of September, 1944; provided, a copy of this order be inserted in some daily newspaper published in the City of Baltimore, at least once a week for three successive weeks before the 25th day of September, 1944 * * *." This notice was published in the *Daily Record* of Baltimore once a week for three successive weeks before the 25th day of September, 1944, as required by the order *nisi*.

On September 14, 1944, Alfred J. Simpson, Jr., and wife filed exceptions to the ratification of the sale on specific grounds, all of these having been abandoned with the exception of the following: That the provisions of Section 122 of Article 81 of the 1939 Edition of the Annotated Code of Maryland, relating to executor's or administrator's sale of real estate for the nonpayment of inheritance taxes, or Section 118 of Article 81 of the 1943 Supplemental Annotated Code of Maryland, relating to the sale of personal property for the same purpose, are too vague and indefinite to authorize the sale that is the subject of this exception.

Over this exception the Orphans' Court passed an order ratifying the sale. From that order the appellants, Alfred J. Simpson, Jr., and Essie P. Simpson, appeal to this Court.

Article 81, Section 122, supra, relating to the collection of inheritance taxes, provides as follows: "The executor shall collect the same from the parties liable to pay said tax or their legal representative within thirteen months from the date of his administration, and pay the same to the register of wills of the county or city in which administration is granted; and if the said parties shall neglect or fail to pay the same within that time, the Orphans' Court of the said county or city shall order the executor to sell for cash so much of said real estate as may be necessary to pay said tax and all expenses of said

sale, including the commisisons of the executor thereon; and after the report of said sale, the ratification thereof and the payment of the purchase money, the executor may execute a valid deed for the estate sold, and not before; provided, however, that nothing in this section contained shall be construed to confer authority on the Orphans' Court to order the sale of any real estate for the satisfaction of inheritance tax after the expiration of four years from the date of the death of the decedent."

The order for the sale for the inheritance tax by the Orphans' Court here was not made until after thirteen months from the date of the administration and was made within four years from the date of the death of the decedent.

The notice required by the Orphans' Court in the instant case under the order *nisi* passed when the report of sale was filed on August 24, 1944, as above set forth, required a copy of the order to be inserted in a daily newspaper published in Baltimore City at least once a week for three successive weeks before the 25th day of September, 1944. Rule 19 of the Supreme Bench for the Circuit Court and the Circuit Court No. 2 of Baltimore City, in equity, for ratification of sales of real or leasehold estates provides for the "* * * order to be inserted in some daily newspaper printed in the City of Baltimore, at least once in each of three successive weeks before the expiration of one month from the date of said order." The order passed by the Orphans' Court in the case at Bar therefore conforms absolutely to the rule adopted by the Equity Courts of Baltimore City on ratification of sales of real or leasehold estates.

Article 93, Section 292, supra, providing for the sale of property for the payment of debts, gives the Orphans' Court the authority to "direct the manner and terms of sale." In the case of *Knapp v. Knapp*, 149 Md. 217, at page 220, 131 A. 327, at page 328, in passing upon the procedure by the Orphans' Court under that statute, it was said: "The very omission of a definite time of publication in that one statuate would seem

rather to proclaim an intention on the part of the. Legislature that the Orphans' Court should not be subject to the restrictions inserted in the other statutes,, but should be left free to follow its own judgment. The present argument is, in effect, that this Court should amend the statute and curtail the general power, given by it, by importing and adding provisions from other statutes. No authority, we think, would support the, contention that one Court might so interfere in the statutory powers of another. Our opinion is that we cannot hold the published notice in this instance insufficient."

Article 81, Section 122, supra, providing for the sale of real estate for the purpose of payment of inheritance. taxes, gives authority to the Orphans' Court, as hereinbefore set out, to order the executor to sell said real estate for cash and "after the report of said sale, the ratification thereof, and the payment of the purchase money, the executor may execute a valid deed for the estate sold. * * * ." It is the opinion of this Court that the statement above quoted from the case of *Knapp v. Knapp,* supra, as to a sale under Article 93, Section 292, supra, would also apply to a sale by the Orphans' Court under Article 81, Section 122, supra, and that the Orphans' Court should not be subject to the restrictions inserted in other statutes, but should be allowed to follow its own judgment; and further that this Court has no authority. to interfere in the statutory powers of the Orphans' Court in this case, and therefore that we cannot reverse the order ratifying the sale, there being no abuse of discretion. It was stipulated that the costs below and on appeal be paid from the estate.

*Order affirmed, costs to be paid from the estate of the deceased.*