## ALFRED G. SHAW *vs.* FRANK B. SMITH, ASSIGNEE.

*Mortgage Sales—Inadequacy of Price—Advertisement—Time of Sale—.*
*Counsel Fees.*

An exception to the ratification of a mortgage sale on the ground that the price paid was grossly inadequate, *held*, not to be sustained by evidence.

When a mortgage sale was duly advertised in a newspaper published in the county where the property was located and circulated throughout that county, the fact that the newspaper had but a limited circulation in that part of the county where the property was situated, is not a sufficient reason for setting aside the sale, since the statute provides merely for the advertisement of sale in some newspaper printed in the county.

The fact that a mortgage sale took place on the county market day affords no ground for excepting to its ratification, when it is not shown that prospective purchasers were kept away from the sale for that reason.

A person to whom a deed has been executed conveying the equity of redemption in mortgaged property is entitled to except to a sale under the mortgage, although the validity of his title is not established.

No allowance of counsel fees can be made out of the proceeds of a mortgage sale to an attorney employed by the mortgagee to defend the sale against exceptions filed to its ratification.

*Decided March 6th, 1908.*

Appeal from the Circuit Court for Prince George's County (MERRICK, J.)

The cause was argued before Boyd, C. J., Briscoe, Page, Pearce, Schmucker, Burke, Thomas and Worthington, JJ.

*Clarence M. Roberts*, for the appellant.

*Frank B. Smith*, for the appellee.

Page, J., delivered the opinion of the Court.

There are two appeals in this record. One from the order of the Court below dismissing exceptions to the sale made and reported by the assignee of the mortgage; and the other from an order allowing the firm of Gibson & Smith the sum of $100 as a fee for professional services in defending these exceptions.

The sale was made under a power contained in the mortgage set out in the record made by Edelin and wife to the Boys' Home Society of Baltimore to secure an indebtedness of $1,000 and interest binding upon certain real property in Prince George's County. Default in the payment of interest having occurred, and the mortgage having been assigned to plaintiff Shaw, the property was sold to one Parkhurst. Subsequently Alfred G. Shaw who claimed to hold an interest in the property, filed exceptions to the ratification of the sale, and these having been overruled by the Court and the sale finally ratified, this appeal was taken.

The grounds upon which these exceptions were based, may be briefly stated as follows:

1st. Alleged gross inadequacy of price.

2nd. Because it was improperly advertised in a newspaper which had no circulation in the locality where the property is located.

3rd. Because it was offered on a day at Marlboro Court House when purchasers would be likely to be kept away from the sale on "market day."

4th. Because Mr. Parkhurst who became the purchaser was at the time of the purchase an attorney of record for the assignee of the mortgage.

5th. Because the assignment of the mortgage was illegal and the assignee acquired no legal title.

As to the first point, it is no doubt well settled, that mere inadequacy of price, of itself, is not sufficient to set aside a sale made by a trustee, unless it is so gross as to indicate misconduct or fraud on his part or there is some just cause which the purchaser may be responsible for which affords reasonable ground for supposing that the sale was improperly made. *Conroy* v. *Carroll*, 82 Md. 127.

This property was sold to Mr. Parkhurst, who became the purchaser in the interest of the mortgagees. Of the objection, that he was at the time of the sale the "Attorney of record for the assignee of the mortgage," it is sufficient to remark that whether true in point of fact or not, there is no evidence to support the averment. Mr. Parkhurst testifies that he became the purchaser "for himself subject to the ratification of the Court." There is nothing that appears from which he can be regarded as having acted unfairly or without proper authority; or whether he was in fact proceeding merely as a solicitor to enforce the interest of his client or for his own purposes. Nor does the price offered by him furnish any evidence of such inadequacy as can indicate that there was unfairness in the making of the sale. As to the value of the property, the evidence is not satisfactory. One Henry J. Kintz undertakes to give his ideas, to the effect that "if a man wanted a good farm, it is worth about $3,500 and the reason he assigns for this, is that the property is 'peculiarly located,'" this "land would he thinks make one of the finest corn crops going;" it is so well and settled by the "*whole of the north*," and has the finest water on it;" and for a further reason adds that "it has a cave on it nobody knows how deep it is and often dogs go in it and stay for days." Subsequently this same witness states that he made an offer to take the property "subject to the mortgages" and he says he understood them to be $1,000 and $2,000. Also offered $200 in cash and $3,000 in stock of National Lumber Company at par; but we are not informed what a fair valuation of this stock per share may be. We do not deem it requisite to pursue this branch of the matter further. The whole testimony shows there is

no evidence with respect to the value of the property, that is at all sufficiently clear and definite as can enable us to form an opinion that the purchase price, set out in the report of sale, is or is not sufficient to maintain the sale; or in any respect shows that such inadequacy, if any, is such as can justify the Court in imputing any misconduct to any of the parties in making the sale.

Other objections were that the sale was advertised in a newspaper having no "general circulation in the locality in which the property was situate." and also that it was offered on a day when prospective bidders would most likely be kept away "on market day."

The sale was advertised in the Maryland Reporter a newspaper published in Prince George's County, where the property is located, according to the terms of the power of sale contained in the provision of the statute relating to the sales of property by a trustee. The evidence shows that this paper had but a limited circulation in the lower part of the county. But in point of fact, it was published in Prince George's County, where the property is located and it circulates throughout the whole county and this was quite sufficient to satisfy the requirements of the law.

Another objection to the sale was, that the property was offered on a day when "prospective purchasers would be likely to be away on market day." But to support this as a valid objection it is not made to appear that the selection of the particular day had any material influence upon the sale. It does not appear that any one was kept away from the sale, by reason thereof, and so far as the record shows, it would seem that every one who had any interest in the matter, or who would likely become a purchaser, had full notice of the sale, and it does not appear that probably the property did not bring as much as it would sell for at any other time or place.

Another objection was that the exceptant Shaw had no such interest in the property as entitled him to except to the sale. But the deed from Chew to Shaw does show that the former conveyed the property in question to Shaw, and the effect of this

deed for the purposes of this proceeding was at least suffi-
cient to furnish *prima facie* a standing in Court to question
the effect of the sale.

We think the lower Court erred in allowing to the attorneys
of the appellee a fee of $100 for services in resisting the ex-
ceptions. The fact that an eleemosynary institution was in-
terested can not affect the legal principles applicable to a case
like the present. Stripped of all its verbiage the case is purely
one, when on the foreclosure of a mortgage, the property
is sold, and the sale is objected to, and pending the proceed-
ings, the complainant finds it necessary in his judgment to do
certain work, to successfully resist the exceptions and seeks to
charge the fund with the fees for such work. The terms of
the mortgage contain no provisions authorizing this to be.
The case seems to be within the rulings in *Mahoney* v. *Mack-
ubin*, 54 Md. 268, where it was held in a case involving, to
some extent, similar principles that the "charge cannot be al-
lowed against the proceeds of sale to the prejudice of the
mortgagor." Upon no principle to which we have been re-
ferred, can such proceedings be made a charge upon the trust
fund.

It is therefore clear that the order contained in the Record,
No. 26, cannot be maintained and it will therefore be reversed.
The costs in this case will be paid by the appellee. Decree
in No. 25 will be affirmed.

> *Decree affirmed in No. 25, and order
> reversed is No. 26. Costs to be
> paid by the appellant in No. 25 and
> by the appellee in No. 26.*